**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Case No:** |
| **v.** | ) | **VIOLATIONS:** |
| **SOJIRO IMAHASHI, TSUYOSHI IFUKU, and YUKI YAMAMIYA,** | ) | **18 U.S.C. § 371 (Conspiracy)** |
| | ) | **18 U.S.C. § 1031(a) (Major Fraud Against the United States)** |
| **Defendants.** | ) | **18 U.S.C. §287 (False Claims)** |
| | ) | **18 U.S.C. § 2 (Aiding and Abetting)** |
| | ) | **18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 21 U.S.C. § 853(p) (Forfeiture)** |

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times material to this Indictment, unless otherwise specified:

1. The United States Navy ("U.S. Navy") was a branch of the United States Department of Defense ("DOD"). The mission of the U.S. Navy was to maintain, train, and equip combat-ready Naval forces capable of winning wars, deterring aggression, and maintaining freedom of the seas.

2. The U.S. Navy maintained a significant forward presence in the Asia-Pacific region, operating out of several bases in Japan including, among other places, Yokosuka, Japan; Sasebo, Japan; and Okinawa, Japan. These bases were an important component of the U.S.-Japan strategic alliance, which has been a cornerstone of U.S. foreign policy since 1945, and vital to the U.S. Navy's mission in the Asia-Pacific region. Dozens of U.S. Navy ships and tenant commands and tens of thousands of U.S. military and civilian personnel were assigned to the U.S. Navy bases in

Japan. U.S. Navy ships were registered in the United States and flew the U.S. flag. In order to, among other things, service its ships abroad, the U.S. Navy entered into contracts with third parties in Japan, and payments made to such contractors were funded by U.S. taxpayers.

3. Kanto Kosan Co. Ltd. ("Kanto Kosan") was a Japanese company specializing in the collection, handling, and treatment of oily wastewater ("OWW") from marine vessels. Since approximately 2007, Kanto Kosan received approximately $120,000,000 in contract awards from the U.S. Navy, tens of millions of which related to OWW treatment.

4. Defendant Sojiro **IMAHASHI** was the President and Chief Executive Officer of Kanto Kosan and a resident of Japan.

5. Defendant Tsuyoshi **IFUKU** was a manager at Kanto Kosan and a resident of Japan.

6. Defendant Yuki **YAMAMIYA** was a manager at Kanto Kosan and a resident of Japan.

**Oily Wastewater Treatment for U.S. Navy Vessels**

7. During normal operations, marine vessels accumulated a variety of waste products, including OWW. OWW generally referred to contaminated water, including, but not limited to, bilge water, oily wastewater, fuel tank cleaning wastewater, ballast tank wastewater, compensating tank wastewater, bulk fuel tank bottom wastewater, hydro-blasting wastewater, wastewater contaminated with Aqueous Film Forming Foam, Fuel System Icing Inhibitor, boiler/steam generator blow-down water, and off-spec feed water. OWW constituted "material" within the meaning of Title 33, United States Code, Section 1402(c).

8. Generally, when marine vessels entered a port, they were serviced and the OWW was emptied from their holds. OWW was usually transferred from vessels and storage barges to "treatment barges," where the entity responsible for treating OWW used various methods to treat and clean the OWW. Once the OWW was properly treated and cleaned, it could then be discharged

from the treatment barge into the ocean in a way that minimized harm to the marine environment, plants and animals in the ocean, and human beings.

9. Treating OWW properly served multiple purposes. In addition to protecting the environment, treating OWW ensured that the U.S. Navy complied with U.S., Japanese, and international regulations regarding ocean dumping and pollution. Further, OWW treatment ensured that the U.S. Navy was perceived positively in Japan, since the appearance of U.S. Navy ships dumping wastewater into Japanese waters would have undermined the U.S.-Japan strategic relationship.

10. Beginning in or around 2007-2008, the U.S. Navy began to incorporate compliance with specific Japanese environmental regulations into its contracts for OWW treatment. The contracts required, per the regulations, that treated OWW met Japanese environmental standards prior to its discharge into the ocean.

**Kanto Kosan's Contracts with the U.S. Navy**

11. The U.S. Navy used Indefinite Delivery – Indefinite Quantity (IDIQ) contracts that provided for an indefinite quantity of services over a fixed time period, and single award contracts, to engage Kanto Kosan to provide OWW collection, holding, and treatment services.

12. These contracts typically required Kanto Kosan to "provide transfer, collection, holding and on-site treatment service for [OWW] generated from ships, submarines, and shore operations." The contracts incorporated Japanese and U.S. environmental regulations that set the levels of different contaminants allowed to be present in post-treatment OWW prior to its discharge into the ocean. The contracts required regular testing of OWW to ensure compliance with applicable regulations. Some of the U.S. Navy's IDIQ contracts with Kanto Kosan were valued at more than $1,000,000.

13. Kanto Kosan was responsible for testing post-treatment OWW and providing the results to the U.S. Navy under the contracts. For example, Contract No. N62649-15-D-0002, awarded to Kanto Kosan in or around October 2014, stated that the "[c]ontractor shall conduct semiannually sampling and testing of effluent discharge from the treatment barge under CLIN 0002 . . . in a laboratory that is certified by the Japanese regulatory authority . . . and provide copies of the test results to CFAY Environmental, Waste Water Program Manager . . . within five (5) working days of receiving results from the accredited Japanese laboratory." Similarly, Contract No. N40084-15-D-6300, awarded to Kanto Kosan in or around April 2015, stated that the "[c]ontractor shall provide barges for collection, holding, and on-site treatment service for black-water and grey-water generated from ships and submarines" and required Kanto Kosan to perform "quarterly sampling and testing of effluent discharge from the treatment barge[s]" and submit "certified tests" to the U.S. Navy. Contracts awarded to Kanto Kosan also provided for independent periodic testing of OWW by the U.S. Navy.

14. One of Kanto Kosan's contract performance standards was "sampling and testing of effluent discharge from the treatment barge shall fall within the acceptable parameters [of Japanese environmental regulations] 100% of the time."

15. The performance standards and testing to ensure that Kanto Kosan complied with the environmental standards were material to Kanto Kosan's continued receipt of, and payment for, U.S. Navy contracts.

16. Kanto Kosan, and defendants **IMAHASHI**, **IFUKU**, and **YAMAMIYA**, never received a permit or U.S. Navy instructions to dump untreated OWW in ocean waters.

17. Kanto Kosan submitted invoices to the U.S. Navy in order to be paid for its work on the contracts.

18. The Defense Finance Accounting Service, a division of the DOD with offices in the United States and Japan, disbursed payment, typically by electronic wire transfer, to Kanto Kosan.

19. DOD paid Kanto Kosan tens of millions of dollars on OWW-related invoices during the pendency of Kanto Kosan's contracts with the U.S. Navy. These payments were generally made in yen (¥), which was the Japanese currency.

## The Fraud and Ocean Dumping Scheme

20. In or around 2007, defendant **IMAHASHI** and others employed by Kanto Kosan decided that, instead of treating OWW in accordance with the requirements of the U.S. Navy contracts and Japanese environmental standards, they would minimally treat the OWW to remove visible contaminates, and then discharge the improperly treated or untreated OWW into the ocean, despite lacking any authorization or permit to do so. Defendants **IMAHASHI**, **IFUKU**, **YAMAMIYA**, and their co-conspirators devised and proceeded to use "short cut" procedures to treat OWW – and to dump untreated and improperly treated OWW into the ocean – for years, from in or around 2007 through in or around 2020.

21. In order to conceal their scheme from the U.S. Navy, defendants **IMAHASHI**, **IFUKU**, **YAMAMIYA**, and their co-conspirators devised means to cheat on the regular environmental testing of the OWW that they were paid by U.S. taxpayers to treat.

22. For example, defendants **IMAHASHI**, **IFUKU**, and **YAMAMIYA** personally instructed other members of the conspiracy to keep a tank on each of Kanto Kosan's treatment barges filled with tap water so that Kanto Kosan would have a ready supply of clean water available to use for environmental tests. When U.S. Navy testers or independent testers would attempt to examine OWW treated by Kanto Kosan, employees of Kanto Kosan, acting on specific instructions from defendants **IMAHASHI**, **IFUKU**, **YAMAMIYA**, and other co-conspirators, and on occasion

defendants **IFUKU** and **YAMAMIYA** personally, directed the testers to take samples from the tanks that were filled with tap water. This had the effect of cheating on the environmental tests.

23. Kanto Kosan employees, at the direction of defendants **IMAHASHI**, **IFUKU**, and **YAMAMIYA**, and on occasion defendants **IFUKU** and **YAMAMIYA** personally, then submitted the results of the falsified tests to the U.S. Navy, allowing Kanto Kosan to falsely pass the contractually required environmental tests and continue to receive payment from the U.S. Navy for treating the OWW when it had, in fact, not treated the OWW.

24. At all relevant times, defendants **IMAHASHI**, **IFUKU**, **YAMAMIYA**, and their co-conspirators, acted, at least in part, within the scope of their employment by and agency for Kanto Kosan, and to benefit Kanto Kosan.

## COUNT ONE
## (18 U.S.C. § 371 – Conspiracy)

25. Paragraphs 1 through 24 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

26. From at least in or around 2007 through in or around 2020, out of the jurisdiction of any particular State or district, defendants,

**SOJIRO IMAHASHI**
**TSUYOSHI IFUKU, and**
**YUKI YAMAMIYA**

did knowingly and intentionally, that is, with the intent to advance the objects of the conspiracy, combine, conspire, and agree with each other, and with other individuals known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

a. false claims, that is, to make, present, and cause to be made and presented, to any person and officer in the civil, military, and naval service of the United States, and to any department and agency thereof, any claim upon and against the United States, and any department

and agency thereof, knowing such claim to be false, fictitious, and fraudulent, in violation of Title 18, United States Code, Section 287;

b. major fraud against the United States, that is, in any grant, contract, subcontract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, and in any procurement of property and services as a prime contractor with the United States and as a subcontractor and supplier on a contract in which there is a prime contract with the United States, where the value of such grant, contract, subcontract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, and any constituent part thereof, was $1,000,000 or more, did knowingly execute and attempt to execute a scheme and artifice with the intent: (i) to defraud the United States; and (ii) to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1031(a); and

c. ocean dumping, that is, in the case of a United States department, agency, and instrumentality, to knowingly transport and cause to be transported from U.S. Navy ships based in Japan certain material, that is, OWW, for the purpose of dumping it into ocean waters without a permit, in violation of Title 33, United States Code, Sections 1411(a) and 1415.

**Purpose of the Conspiracy**

27. The purpose of the conspiracy was for defendants **IMAHASHI**, **IFUKU**, **YAMAMIYA**, and their co-conspirators to unlawfully enrich themselves, and Kanto Kosan, by: obtaining money from the U.S. Navy, through the DOD, for Kanto Kosan and themselves by winning U.S. Navy contracts to treat OWW; improperly treating the OWW in violation of these contracts and environmental standards; and to conceal the conspiracy.

**Manner and Means of the Conspiracy**

28. In furtherance of the conspiracy, and to accomplish its objects and purpose, defendants **IMAHASHI, IFUKU, YAMAMIYA**, and their co-conspirators used the following manner and means, among others:

a. The members of the conspiracy applied for and received U.S. Navy contracts for OWW treatment, and agreed to abide by all terms of the contracts and relevant regulations.

b. The members of the conspiracy removed OWW from U.S. Navy vessels and moved it to treatment barges, where they minimally treated the water before dumping it in the ocean, in violation of environmental regulations.

c. The members of the conspiracy falsified tests, and caused falsification of tests, for the U.S. Navy in order to misrepresent that Kanto Kosan was properly treating OWW, when in fact it was not, by sampling tap water instead of treated OWW.

d. The members of the conspiracy concealed the scheme from the U.S. Navy by submitting and causing the submission of falsified tests and lying about their compliance with relevant environmental regulations and contract provisions.

e. The members of the conspiracy submitted and caused the submission of claims for payment to the U.S. Navy in which they falsely and fraudulently claimed that they had completed OWW treatment work.

**Overt Acts in Furtherance of the Conspiracy**

29. In furtherance of the conspiracy and to accomplish its objects and purpose, at least one co-conspirator committed and caused the commission of at least one of the following overt acts out of the jurisdiction of any particular State or district:

a. On or about May 4, 2016, a Kanto Kosan employee submitted an invoice to the U.S. Navy requesting payment of approximately ¥117,340,000 for OWW treatment work under Contract No. N40084-15-D-6300 performed between in or around December 2015 and in or around March 2016.

b. On or about July 22, 2016, a Kanto Kosan employee submitted an invoice to the U.S. Navy requesting payment of approximately ¥35,966,000 for OWW treatment work under Contract No. N62649-15-D-0009 performed between in or around December 2015 and in or around February 2016.

c. On or about September 20, 2016, a Kanto Kosan employee submitted an invoice to the U.S. Navy requesting payment of approximately ¥500,000 for OWW treatment work under Contract No. N62649-15-D-0002 performed in or around June 2016.

d. On or about November 20, 2016, a Kanto Kosan employee submitted an invoice to the U.S. Navy requesting payment of approximately ¥16,716,000 for OWW treatment work under Contract No. N62649-15-D-0009 performed between in or around July 2016 and in or around September 2016.

e. On or about January 30, 2019, a Kanto Kosan employee submitted an invoice to the U.S. Navy requesting payment of approximately ¥13,850,000 for OWW treatment work under Contract No. N62649-19-P-0012 performed between in or around October 2018 and in or around December 2018.

f. On or about May 1, 2020, a Kanto Kosan employee submitted an invoice to the U.S. Navy requesting payment of approximately ¥19,550,000 for OWW treatment work under Contract No. N40084-20-D-6300 performed in or around April 2020.

In violation of Title 18, United States Code, Section 371.

**COUNTS TWO THROUGH FIVE**
**(18 U.S.C. §§ 1031(a) and 2 – Major Fraud against the United States)**

30. Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

31. From at least in or around 2007 through in or around 2020, out of the jurisdiction of any particular State or district, defendants,

**SOJIRO IMAHASHI,**
**TSUYOSHI IFUKU, and**
**YUKI YAMAMIYA**

aided and abetted by each other and others known and unknown to the Grand Jury, in any grant, contract, subcontract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, and in any procurement of property and services as a prime contractor with the United States and as a subcontractor and supplier on a contract in which there is a prime contract with the United States, where the value of such grant, contract, subcontract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, or any constituent part thereof, was $1,000,000 or more, did knowingly execute and attempt to execute a scheme and artifice with the intent: (a) to defraud the United States; and (b) to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**Purpose of the Scheme and Artifice to Defraud**

32. The Grand Jury realleges and incorporates by reference paragraph 27 of this Indictment as though fully set forth herein as a description of the purpose of the scheme and artifice.

**Manner and Means of the Scheme and Artifice**

33. The Grand Jury realleges and incorporates by reference paragraphs 28 and 29 of this Indictment as though fully set forth herein as a description of the scheme and artifice.

**Execution of the Scheme and Artifice**

34. On or about the dates specified in the chart below, out of the jurisdiction of any particular State or district, defendants **IMAHASHI**, **IFUKU**, and **YAMAMIYA**, as specified in each count below, did knowingly execute and attempt to execute the scheme and artifice as described above, with the intent to defraud the United States, and to obtain money and property by means of false and fraudulent pretenses, representations, or promises, with each count representing a separate execution of the scheme:

| Count | Approximate Date of Invoice | Approximate Amount of Invoice | Contract Number | Defendant(s) |
|---|---|---|---|---|
| 2 | May 4, 2016 | ¥117,340,000 | N40084-15-D-6300 | IMAHASHI, IFUKU |
| 3 | July 22, 2016 | ¥35,966,000 | N62649-15-D-0009 | IMAHASHI, IFUKU |
| 4 | November 20, 2016 | ¥17,226,000 | N62649-15-D-0009 | IMAHASHI, IFUKU |
| 5 | May 1, 2020 | ¥19,550,000 | N40084-20-D-6300 | IMAHASHI, IFUKU, YAMAMIYA |

In violation of Title 18, United States Code, Sections 1031 and 2.

**COUNTS SIX THROUGH ELEVEN**
**(18 U.S.C. §§ 287 and 2 – False Claims)**

35. Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

36. On or about the dates set forth below, out of the jurisdiction of any particular State or district, defendants,

**SOJIRO IMAHASHI,**
**TSUYOSHI IFUKU, and**
**YUKI YAMAMIYA**

as specified by in each count below, aided and abetted by each other and others known and unknown to the Grand Jury, made, presented, and caused to be made and presented, to any person and officer in the civil, military, and naval service of the United States, and to any department and agency thereof, any claim upon and against the United States, and any department and agency thereof, knowing such claim to be false, fictitious, and fraudulent; that is, defendants **IMAHASHI**, **IFUKU**, and **YAMAMIYA** caused the submission to the Department of Defense of false and fraudulent claims for payment for OWW treatment work, as specified below:

| Count | Approximate Date of Claim | Approximate Amount Paid on Claim | Contract Number | Defendant(s) |
|---|---|---|---|---|
| 6 | May 4, 2016 | ¥117,340,000 | N40084-15-D-6300 | IMAHASHI, IFUKU |
| 7 | July 22, 2016 | ¥35,966,000 | N62649-15-D-0009 | IMAHASHI, IFUKU |
| 8 | September 20, 2016 | ¥1,170,000 | N62649-15-D-0002 | IMAHASHI, IFUKU |
| 9 | November 20, 2016 | ¥17,226,000 | N62649-15-D-0009 | IMAHASHI, IFUKU |
| 10 | January 30, 2019 | ¥13,850,000 | N62649-19-P-0012 | IMAHASHI, IFUKU, YAMAMIYA |
| 11 | May 1, 2020 | ¥19,550,000 | N40084-20-D-6300 | IMAHASHI, IFUKU, YAMAMIYA |

Each count a separate offense, all in violation of Title 18, United States Code, Sections 287 and 2.

## FORFEITURE ALLEGATION

The Grand Jury further charges that:

37. The allegations contained in paragraphs 1 through 36 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

38. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense alleged in Count One of this Indictment, any defendant so convicted shall forfeit to the United States of America all property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to, a money judgment in the amount of the total loss caused by the defendants' criminal conduct, as determined by the Court at sentencing.

39. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

THIS IS A TRUE BILL.

______________________________
FOREPERSON

DANIEL S. KAHN
Acting Chief
Criminal Division, Fraud Section
United States Department of Justice

By: ______________________________
MICHAEL MCCARTHY
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice

Dated: February 16, 2021