**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**ERIC GAVALEK MUNCHEL,**<br>**LISA MARIE EISENHART,**<br><br>*Defendants.* | **Case No. 1:21-cr-118-RCL** |

**MEMORANDUM OPINION**

Pending before the Court is an application submitted on behalf of sixteen media organizations (the "Press Coalition") for access to video exhibits related to the pretrial detention proceedings in this criminal case. Defendants Eric Munchel and Lisa Eisenhart are charged by indictment relating to the events at the U.S. Capitol on January 6, 2021. This Court reversed a magistrate judge's decision releasing the defendants and ordered defendants detained pending trial. *United States v. Munchel*, 521 F. Supp. 3d 54 (D.D.C. 2021). But the D.C. Circuit remanded to this Court for additional consideration whether defendants posed an identified and articulable threat to the community. *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021). All three courts relied heavily on an iPhone video shot by Munchel at the Capitol. To support its request for pretrial detention, the government submitted to this Court the iPhone video and eight CCTV videos from the Senate Lobby hallway. The government does not oppose the release of these requested videos. Defendants, however, argue that while the Court may permit the Press Coalition to access the videos, the Court should prohibit "release"—copying or rebroadcasting the videos to the public. Defendants argue that release may prejudice their privacy rights and right to a fair trial. Upon consideration of the parties' filings, ECF Nos. 97, 98, 99, and the arguments set forth at the hearing, the Court will **GRANT** the Press Coalition's application.

1

## I. BACKGROUND

Defendants face criminal charges for participating in the unsuccessful insurrection at the Capitol on January 6, 2021. *See* ECF No. 76. That day, Munchel wore an iPhone mounted on his chest, which filmed a fifty-minute video of events outside and inside the Capitol. *See* ECF No. 3 at 5. Following defendants' arrests in Tennessee, the government moved to detain defendants pending trial. *See* ECF Nos. 3, 6. At his detention hearing, Munchel introduced under seal excepts from the iPhone video. The government's witnesses described the full iPhone video's contents in detail. At Eisenhart's detention hearing, the magistrate judge admitted the full iPhone video under seal. The magistrate judge ordered defendants released pending trial subject to a litany of conditions.

The government moved for an emergency stay and appealed the magistrate judge's decision. ECF Nos. 3, 6. In a letter to the Chief Judge, the government provided Munchel's iPhone video and eight CCTV videos from the Senate Lobby hallway. *See* ECF No. 35-2 at 1. Chief Judge Howell granted the government's motion to stay the release order. ECF Nos. 4, 7. The case was subsequently assigned to the undersigned and the Court scheduled a detention hearing for February 17, 2021. *See* 2/17/2021 Min. Order.

On February 17, 2021, the government sent an additional letter to this Court's chambers with the CCTV videos from the Capitol and Munchel's iPhone video. *See* ECF No. 35-1. Munchel also submitted excerpts from the iPhone video under seal in support of his motion for pretrial release. At the detention hearing, all parties relied heavily on the iPhone video. *See, e.g.*, 2/17/21 Tr. 10, 23. Relying in substantial part on the iPhone video, this Court granted the government's motion for review and ordered defendants detained pending trial. *See Munchel*, 521 F. Supp. 3d at 56–67. After defendants appealed, the government subsequently filed a notice with the videos and motion to supplement the record on appeal with the iPhone video. ECF Nos. 35, 36.

2

Defendants disputed whether the iPhone video should be included in the record because the government provided these videos ex parte. ECF No. 39. The Court granted the government's motion. ECF No. 43.

The D.C. Circuit remanded this Court's decision for additional consideration as to whether defendants posed "an identified and articulable threat to the community." *Munchel*, 991 F.3d at 1282. The Circuit also cited the iPhone video at length, *see id.* at 1275–77, and recognized that this Court's consideration encompassed the CCTV video as well, *id.* at 1280.

On September 19, 2021, the Press Coalition filed an application for access to the CCTV videos and Munchel's iPhone video. ECF No. 97. This Court granted the application and ordered the government to make the videos available within 72 hours in accordance with the Chief Judge's Standing Order 21-28. *See* 9/16/2021 Min. Order. The government and defendants moved for a stay the following day. *See* ECF Nos. 98, 99. The government requested time to consult with equity holders (including the United States Capitol Police) as to whether they opposed the release of the videos. ECF No. 98. And defendants moved for reconsideration or a stay of the minute order and asked for additional time to "fully submit their position on this request." ECF No. 99. The Court granted the parties a stay until September 20, 2021, ECF No. 100, at which time the Court held a hearing on the Press Coalition's motion. 9/20/2020 Min. Entry.

At the hearing, the government withdrew its objection to the release of the videos in this case. 9/20/2021 Tr. 17. Defendants, however, explained that while they do not oppose "access" to the videos, they oppose "release" or transmitting and rebroadcasting these videos to the public. *See id.* at 24. They argue that permitting the release and dissemination of these videos could endanger their safety, prejudice their right to a fair trial, and taint the jury pool. *Id.* at 28–30. Defendants' proposed solution is "to wait to produce the full tape until after the trial is started, if

we get that far." *Id.* at 25. After the hearing, the Court stayed its order granting the application pending further order. 9/20/2021 Min. Order. In the subsequent weeks, defendants have not attempted to file any further briefing to supplement their oral argument. The Press Coalition's application is ripe for consideration.

## II.   LEGAL STANDARDS

Standing Order 21-28 provides "a *procedure* for providing media access to video exhibits submitted in Capitol Cases." *See In re Press & Public Access to Video Exhibits in Capitol Riot Cases*, 21-MC-46 (BAH), 2021 WL 1946378, at *7 (D.D.C. May 14, 2021) (emphasis added). It does not displace the common law right of access and instead advises that each judge should assess what type of access is appropriate on a case-by-case basis. *Id.* at *5. Accordingly, the Court will analyze the Press Coalition's request under the common law right of access.

The D.C. Circuit has explained that the "common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'" *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)). The importance of the right cannot be understated. It "serves to produce an informed and enlightened public opinion[,] . . . safeguard[s] against any attempt to employ our courts as instruments of persecution, promote[s] the search for truth, and [] assure[s] confidence in judicial remedies." *Id.*

To determine whether this important right is implicated, the Court first asks whether the subject of an application is a "judicial record." "[N]ot all documents filed with courts are judicial records"; rather, "whether something is a judicial record depends on the 'role it plays in the adjudicatory process.'" *Id.* at 1128 (quoting *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013)). But "in all cases," *In re Application for Access to Certain Sealed Video Exhibits*, No. 21-MC-78

4

(JDB), 2021 WL 2711706, at *2–3 (D.D.C. June 30, 2021), "materials filed in court [and] 'intended to influence the court'" qualify as judicial records, *United States v. Jackson*, No. No. 21-mj-115 (BAH), 2021 WL 1026127, at *4 (D.D.C. Mar. 17, 2021) (quoting *In re Leopold*, 964 F.3d at 1128).

A "strong presumption in favor of public access" attaches to judicial records. *In re Leopold*, 964 F.3d at 1127 (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)). But this presumption "may be outweighed by competing interests." *MetLife*, 865 F.3d at 665. To balance the public and private interests at stake, courts in this Circuit apply a six-factor test crafted by the D.C. Circuit in *Hubbard*. *See In re Leopold*, 964 F.3d at 1131. Specifically, a court must weigh:

> (1) the need for public access to the documents at issue;
> (2) the extent of previous public access to the documents;
> (3) the fact that someone has objected to disclosure, and the identity of that person;
> (4) the strength of any property and privacy interests asserted;
> (5) the possibility of prejudice to those opposing disclosure; and
> (6) the purposes for which the documents were introduced during the judicial proceedings.

*Id.* (quoting *MetLife*, 865 F.3d at 665).

### III. ANALYSIS

As noted previously, defendants do not oppose the Press Coalition's request for immediate *access* to the video exhibits in this case. Nor do defendants oppose releasing the videos after trial has started. 9/20/2021 Tr. 25. Defendants frame their challenge to the Press Coalition's application as one to *when* the videos can be released in this case. Defendants contend that while the Press Coalition should now be able to view these videos and write about them, the Press Coalition should not be permitted to copy or retransmit the videos until after the trial has started. Even so framed, defendants' challenge falls short. As the following explains, the video exhibits

in this case are judicial records and a strong presumption of public access attaches to them. Accordingly, the Court's decision as to when and whether the videos should be released is guided by the considerations in the six-part *Hubbard* test. Here, the Court finds that defendants' arguments are insufficient to overcome the presumption of access. The Court will thus order the release of the videos sought in the application.

### A. The Exhibits Are Judicial Records And A Presumption Of Access Applies

To begin, the videos at issue are judicial records. "[W]hether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *In re Leopold*, 964 F.3d at 1128 (quoting *Am. Int'l Grp.*, 712 F.3d at 3). Documents and other materials filed in court that are "intended to influence the court," are judicial records. *Id.* Here, Munchel's iPhone video and the CCTV videos were submitted to the magistrate judge and to this Court to "influence a judicial decision," under the Bail Reform Act, 18 U.S.C. § 3142—i.e., whether defendants should be detained or released pending trial. *League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020); *see, e.g.*, ECF No. 3 at 9–12; ECF No. 13 at 3; ECF No. 35-1. Neither defendant disputes that the iPhone video was relied upon extensively by the magistrate judge, this Court, and the D.C. Circuit when considering defendants' pretrial detention. And this Court indeed viewed the CCTV footage before making its detention decision. All these exhibits played a "significant and meaningful role in the adjudicatory process," and are plainly judicial records. *Jackson*, 2021 WL 1026127, at *5.

Because these videos are judicial records, a "strong presumption in favor of public access" attaches to them. *In re Leopold*, 964 F.3d at 1127. Defendants do not seriously dispute that the presumption applies, but they do attempt to reframe and limit the scope of this presumption. At the hearing, defendants suggested that "full release"—which the Court understands to mean

anything beyond merely viewing the footage, including additional actions like copying, retransmitting, or rebroadcasting the videos—is peripheral to the core right of access. *See* 9/20/2020 Tr. 24. Not so.

Defendants' proposed version of the right has no basis in precedent and is antithetical to the instrumental goals served by the right. The common law right of access has long encompassed the right to "copy public records." *See, e.g., In re Leopold*, 964 F.3d at 1127. In fact, American courts have not only rejected artificial limitations on the common law right of access but also "tended to view *any* limitation as repugnant to the spirit of our democratic institutions." *United States v. Mitchell*, 551 F.2d 1252, 1257 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978). It is thus not surprising that the Courts of Appeal have recognized that the right (and the accompanying presumption of access) extends to release and rebroadcasting by news media. *See In re Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 952 (2d Cir. 1980) ("When physical evidence is in a form that permits inspection and copying without any significant risk of impairing the integrity of the evidence or interfering with the orderly conduct of the trial, only the most compelling circumstances should prevent contemporaneous public access to it."); *United States v. Criden*, 648 F.2d 814, 823 (3d Cir. 1981) ("When the common law right of access is buttressed by the significant interest of the public in observation, participation, and comment on the trial events, we believe that the existence of a presumption of release is undeniable."). Release promotes the same instrumental goals underlying the common law right: "produc[ing] an informed and enlightened public opinion[,] . . . promot[ing] the search for truth, and [] assur[ing] confidence in judicial remedies." *In re Leopold*, 964 F.3d at 1127 (quoting *Hubbard*, 650 F.2d at 315 n.79); *see Criden*, 648 F.2d at 822 ("[B]roader dissemination

7

would serve the same values of 'community catharsis,' observation of the criminal trial process, and public awareness served by the open trial guarantee.").

Accordingly, the Court will reject defendants' attempts to limit the scope of the right and the presumption of access that attaches to these videos. But the Court agrees with the defendants that the common law "right to inspect and copy judicial records is not absolute." *Nixon*, 435 U.S. at 598. Accordingly, the Court must next address whether the presumption weighing in favor of access is "outweighed by competing interests," and apply the six-factor *Hubbard* test.

### B. Application Of The *Hubbard* Factors

Upon consideration of the *Hubbard* factors, the Court finds that defendants' arguments are insufficient to overcome the strong presumption of public access to the video exhibits. Release is proper here.

#### 1. Need for Public Access to the Exhibits

The need for public access weighs heavily in favor of disclosure. Courts in this district have granted media applications when the records at issue implicate "issues of major public importance related to the conduct not only of the defendant[ ] but also of government law enforcement agents." *Jackson*, 2021 WL 1026127, at *6 (quoting *In re Application of Nat'l Broad. Co.*, 653 F.2d 609, 620–21 (D.C. Cir. 1981)). It cannot be understated that the events of January 6, 2021, are of "deep national importance," *id.*, so there "is a strong public interest in seeing real-time images of what happened that day," *In re Application for Access to Certain Sealed Video Exhibits*, 2021 WL 2711706, at *5.

And there is an independently strong public interest in the *legal significance* of these videos. The D.C. Circuit has recognized that "there is a need for public access in those instances where the [records] at issue [are] . . . specifically referred to in the trial judge's public decision."

*E.E.O.C. v. Nat'l Children's Ctr., Inc.,* 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting *Hubbard*, 650 F.2d at 318). Here, the Court viewed, "referred to," and relied upon the footage in making its determination that defendants should be detained pending trial. *Hubbard*, 650 F.2d at 318; *see Munchel*, 521 F. Supp. 3d at 64. The D.C. Circuit, despite citing the same footage, disagreed with this Court's detention determination and remanded for additional consideration as to whether defendants constituted an "identified and articulable threat to an individual or the community." *Munchel*, 991 F.3d at 1275–77. The Circuit's remand decision in *this case* has thus far served as a lodestar for determining whether a January 6 defendant may be detained. *See, e.g., United States v. Owens*, No. 21-cr-286 (BAH), 2021 WL 2188144, at *6 (D.D.C. May 28, 2021); *United States v. Gieswein*, No. 21-cr-24 (EGS), 2021 WL 3168148, at *9 (D.D.C. July 27, 2021). Releasing the videos promotes an "informed and enlightened public opinion" about the type of defendant who may be detained pending trial in this Circuit. *In re Leopold*, 964 F.3d at 1127.

Defendants argue that the "need" for these videos is "belied by the fact that [the Press Coalition] waited over six months to even seek this information." Tr. 26. But the Press Coalition's actions are of minimal importance to the Court's analysis under this factor. The Court has concluded that there is a strong *public interest* in this footage which weighs in favor of greater access. That the Press Coalition specifically took several months to seek this footage does not affect that conclusion. And defendants tacitly concede this by acknowledging that the Press Coalition's access to these videos would be proper. *See* 9/20/2021 Tr. 29. The first *Hubbard* factor weighs strongly in favor of greater public access to the videos, including release.

### 2. The Extent of Previous Public Access to Video Exhibits

"[P]revious access has been considered relevant to a determination whether more liberal access should be granted to materials formerly properly accessible only on a limited basis through

9

legitimate public channels and to a determination [of] whether further dissemination of already accessible materials can be restrained." *Hubbard*, 650 F.2d at 318. Generally, when "much of the critical information is already in the public forum," this factor weighs in favor greater disclosure. *In re Application of New York Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008).

As defendants correctly identify, at all relevant times in this case the videos sought in the Press Coalition's application have been under seal. So the public has not had access to any of these videos. Accordingly, defendants argue that if the Press Coalition is granted access to the videos, the Court should restrict copying, releasing, or retransmitting of any type. The Court disagrees. To the extent that the previous access weighs against release, it does so only slightly. The public has already had access to photographs of defendants in the Senate Chamber—photographs that show Munchel carrying a handful of zip-tie handcuffs. *E.g.*, Zoe Tillman, *An Alleged Capitol Rioter Photographed with Zip Tie Handcuffs Will Stay in Jail*, Buzzfeed News (Feb. 17, 2021)[1]; *cf. Jackson*, 2021 WL 1026127, at *6 (concluding that an order sealing videos, where images of the same events were already readily accessible on the internet, would be "both pointless and unwarranted"). The Court's memorandum opinion—which is also available to the public—describes in detail the events in Munchel's iPhone video. *Munchel*, 521 F. Supp. 3d at 56–57. The D.C. Circuit's decision also cites many parts of the iPhone video. *Munchel*, 991 F.3d at 1275–77. And the CCTV videos largely show the same events—albeit from a different perspective. While the Court agrees that this factor weighs against broader release, it does so only slightly because the public has already been informed about the contents of the videos at issue.

---

[1] *Available at* https://www.buzzfeednews.com/article/zoetillman/capitol-riot-zip-tie-guy-eric-munchel-jailed-trial.

10

### 3. Identity of the Person Objecting to Disclosure

Generally, *Hubbard* provides "broader protection" when a third party's privacy or property rights are at issue and that third party objects. *Jackson*, 2021 WL 1026127, at *7; *In re Application for Access to Certain Sealed Video Exhibits*, 2021 WL 2711706, at *5. But where, as here, the only party to object is the defendant, courts in this district have concluded that this factor weighs in favor of disclosure. *Jackson*, 2021 WL 1026127, at *7; *In re Application for Access to Certain Sealed Video Exhibits*, 2021 WL 2711706, at *5. And the Circuit has also recognized that when the government is a party to the case—and supports public access to the judicial record—this further strengthens the case for access. *See Nat'l Children's Ctr.*, 98 F.3d at 1409. On balance, the Court finds that this factor does not weigh against release.

### 4. Strength of Asserted Privacy and Property Interests

The fourth *Hubbard* factor focuses on the objecting parties' privacy and property interests in the particular material at issue. *See Jackson*, 2021 WL 1026127, at *7. Disclosure is discouraged where there is a possibility of "public humiliation and degradation" that would "constitute an unconscionable invasion of privacy" to innocent third persons. *In re Application of Nat'l Broad. Co.*, 653 F.2d at 620.

Defendants identify three privacy and property interests that purportedly weigh against release in this case. The Court is not persuaded. First, defendants argue that Munchel's iPhone video is his property. That is technically true. But this is hardly the type of substantial property interest that the D.C. Circuit has recognized to weigh against disclosure. *See, e.g., Metlife, Inc.* 865 F.3d at 671 (explaining that secret nature of documents' contents, which contained sensitive business information and trade secrets, may weigh against public access); *Hubbard*, 650 F.2d at 320 (concluding that third-party church's interest in preventing disclosure of private documents

11

seized from a non-public area weighed against public access). And defendants make no effort to explain what type of injury to their property interests they will suffer from the release of the iPhone video. (Defendants have identified no property interest in the CCTV videos captured by the Capitol's surveillance system.)

Second, defendants argue that the privacy interests of those in the video weigh against disclosure. Not so. The events captured in the videos not only took place in a public setting but were also extensively captured by photographers and videographers (many who were also participants). As Chief Judge Howell has explained, the fourth *Hubbard* factor's concern with an "unconscionable invasion of privacy to innocent third persons" is simply not implicated when the images at issue "were captured while [those present were] participating very publicly with a mob assaulting the Capitol." *Jackson*, 2021 WL 1026127, at *7 (quoting *In re Application of Nat'l Broad. Co.*, 653 F.2d at 620).

Third, defendants also argue that the release of these videos implicates their safety.[2] 9/20/2021 Tr. 28. In support of this argument, defendants proffered at the hearing that they have received threats because of their involvement in this case. *Id.* Recognizing that they have already been subjected to significant publicity from photographs and other news coverage, defendants argue that the release of these videos is qualitatively different because "the power of video" is "significantly greater on the community than still photographs or reports." *Id.*

Defendants' appeal to generalized safety concerns is not enough to swing the fourth *Hubbard* factor in their favor. As defendants acknowledge, the public already has access to photographs of defendants carrying zip ties in the Senate chamber. *See, e.g., id.*; Tillman, *supra*.

---

[2] Defendants made their safety-related arguments under *Hubbard*'s "prejudice" prong, *see* 9/20/2021 Tr. 27–28, but the Court finds that this interest is better considered here. The prejudice prong ordinarily focuses on the trial rights of the defendant. *See, e.g., Hubbard*, 650 F.2d at 320–21 & n.107.

12

The Court described defendants' conduct in detail in its published memorandum opinion. *See Munchel*, 521 F. Supp. 3d at 64. And the Court's hearings in this matter are publicly available to those using this Court's public access line. U.S. District Court for the District of Columbia, *COVID-19 Emergency Public Access Teleconference Information for Judges*, https://www.dcd.uscourts.gov/covid-19-emergency-public-access-teleconference-information-for-judges (last visited Oct. 7, 2021). Defendants and January 6 cases have already received significant public attention, so the Court's analysis must ask whether the release of these particular videos is likely to create a new or heightened risk to defendants' safety beyond that which already exists. In light of the publicity defendants have already received, the Court is not persuaded that releasing these videos of the events will create a new or heightened risk to defendants' safety that this factor weighs against disclosure. The fourth *Hubbard* factor weighs in favor of release.

### 5. Possibility of Prejudice

The fifth *Hubbard* factor addresses whether defendants' rights in this proceeding will be prejudiced by release. *See, e.g., Hubbard*, 650 F.2d at 320–21; *Jackson*, 2021 WL 1026127, at *7–*8. On this factor, defendants argue that releasing the videos may taint the jury pool and compromise their right to a fair trial, especially if aspects of the video are presented "in an incomplete manner and out of context." *See* ECF No. 99 at 2–3; Tr. 28, 29. Here too, defendants' arguments fall short.

At the hearing, defendants made no attempt to explain why *voir dire*, "the traditional method of protecting defendants from the adverse effects of publicity," would be insufficient to guarantee them a free trial. *Criden*, 648 F.2d at 828; *see, e.g., In re Application of Nat'l Broad. Co.*, 635 F.2d at 953 ("The opportunity for *voir dire* examination still remains a sufficient device to eliminate from jury service those so affected by exposure to pre-trial publicity that they cannot

13

fairly decide issues of guilt or innocence."). And the tools available to this Court to mitigate any effects of pretrial publicity on a defendant's right to a fair trial do not stop there. This Court can take additional protective measures like granting a continuance or changing venue. *In re Application of Nat'l Broad. Co.*, 635 F.2d at 953 n.9 (citing *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)). In other cases involving significant public attention, courts have consistently recognized that these tools are adequate to protect defendants' rights. *See, e.g., id.*; *United States v. Haldeman*, 559 F.2d 31, 61–63 & n.37 (D.C. Cir. 1976); *United States v. Kahaner*, 204 F. Supp. 921 (S.D.N.Y. 1962), *aff'd*, 317 F.2d 459 (2d Cir. 1963). As these tools have protected defendants' rights to a fair trial and impartial jury before, so too will they protect defendants' rights here. Defendants' failure to grapple with the sufficiency of these traditional methods of guaranteeing a free trial dooms their prejudice arguments.

What's more, the force of defendants' prejudice arguments is diminished because of the publicity defendants have already received. The photos of defendants in the Senate gallery and several filings describing their conduct in detail, including this Court's published opinion, are already available to the public. While defendants here argue that "the power of video" makes release more likely to prejudice them, 9/20/2021 Tr. 28, the Court is neither convinced that defendants face an increased risk of prejudice considering previous publicity in this case nor persuaded that *voir dire* will be insufficient to mitigate any prejudice.

Viewing this case in context reinforces the Court's conclusion. Defendants are just two of more than six hundred defendants in a massive law enforcement operation focused on the events of January 6. *See* U.S. Atty's Office for D.C., *Eight Months Jan 6 Attack Capitol* (Sept. 14, 2021), https://www.justice.gov/usao-dc/eight-months-jan-6-attack-capitol. The events on January 6 and the many other defendants are also receiving public attention. As the Second Circuit has noted,

14

"Defendants, as well as the news media, frequently overestimate the extent of the public's awareness of news." *Application of Nat'l Broad. Co.*, 635 F.2d at 953. The status conferences in this case show that the government and defendant are still trudging through a lengthy discovery process involving hundreds of thousands of photos, videos, and other exhibits. *See, e.g.*, ECF Nos. 90, 96. So the Court is not convinced that by the time a trial date is set, the release of these videos is likely to taint the potential jury pool in this *particular case*.

"Given the scope of prior public access," the tremendous media coverage of the January 6 events as a whole, and the vast number of January 6 defendants, releasing these clips is unlikely to prejudice defendants. *In re Application for Access to Certain Sealed Video Exhibits*, 2021 WL 2711706, at *5. And to the extent that defendants may suffer any increase in prejudice, the Court is not convinced that it is enough to overcome the presumption of public access here, especially when *voir dire* can cure that prejudice. *See Jackson*, 2021 WL 1026127, at *8 ("Further disclosures of his actual offense conduct as it occurred and captured on all five Video Exhibits may focus more attention on that conduct and possibly exacerbate that prejudice, but not to an extent that overcomes the presumption of public access.").

### 6. The Purpose for Which Video Exhibits Were Introduced

Courts in this district recognize that a "strong presumption of public access [applies] to documents that a litigant submits with the intention that the court will rely on them." *Jackson*, 2021 WL 1026127, at *8 (quoting *United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-cv-798 (PLF/GMH), 2020 WL 7773423 at *8 (D.D.C. Dec. 30, 2020)).[3] Here, the videos were submitted to the Court with the purpose of influencing the Court's detention determination. The

---

[3] Notably, in *Hubbard*, the D.C. Circuit concluded that this factor was the "single most important" factor in its determination that the district court's unsealing order was an abuse of discretion. *Hubbard*, 650 F.2d at 321.

Supreme Court has explained that exceptions to the common law right may exist where "court files might have might have become a vehicle for improper purposes . . . such as to 'gratify private spite or promote public scandal.'" *Nixon*, 435 U.S. at 597. But defendants do not claim, and the Court has no reason to believe, that the videos were introduced for any improper purpose. Accordingly, this factor weighs firmly in favor of release.[4]

\*   \*   \*

Together, the presumption of access to the videos is not outweighed by any significant, countervailing interests. The *Hubbard* factors strongly support not only mere "access," which defendants concede, but also "release." The right to public access includes the ability "to inspect and copy" judicial records, *MetLife*, 865 F.3d at 665 (quoting *Nixon*, 435 U.S. at 597), so the Court will permit the Press Coalition to "record, copy, download, retransmit, and otherwise further publish" the videos as it requests.

## IV. CONCLUSION

Based on the foregoing, the Court will **GRANT** the Press Coalition's application by separate order.

Date: 10/8/21

Royce C. Lamberth
United States District Judge

---

[4] Defendants attempted to argue that the purpose for which these videos were introduced was "under seal." 9/20/2021 Tr. 28. But sealing was not the "purpose" for which the documents were introduced. Instead, the relevant question is why the documents were submitted to the Court—i.e, to influence a court decision and not for another improper purpose. *See, e.g.*, *Hubbard*, 650 F.2d at 321; *Jackson*, 2021 WL 1026127, at \*8; *In re Application for Access to Certain Sealed Video Exhibits*, 2021 WL 2711706, at \*5. The documents' introduction under seal has already been considered in the context of *Hubbard*'s second factor. *See supra*.