**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:21-CR-118-RCL** |
| **ERIC MUNCHEL and LISA EISENHART,** | |
| *Defendants*. | |

**MEMORANDUM OPINION**

Defendants Eric Munchel and Lisa Eisenhart were indicted based on their alleged participation in the protest and riot that resulted in the January 6, 2021 breach of the United States Capitol. *See United States v. Munchel*, 991 F.3d 1273, 1278 (D.C. Cir.)*, judgment entered,* 844 F. App'x 373 (D.C. Cir. 2021). Both defendants have agreed to a stipulated trial, meaning a bench trial based on a stipulated set of facts. Before that stipulated trial can commence, however, the Court must resolve several pending motions to dismiss the indictment. Mr. Munchel challenges the indictment as defective because the charges lack specificity, are prejudicially multiplicitous, and fail to state an offense as to a Taser being a deadly or dangerous weapon. Def. Munchel's Mot. Dismiss, ECF No. 161. Ms. Eisenhart challenges several counts of the indictment for failing to state an offense or being barred by the Constitution. Def. Eisenhart's First Mot. Dismiss, ECF No. 176. Ms. Eisenhart also challenges several counts of the indictment as defective due to multiplicity. Def. Eisenhart's Second Mot. Dismiss, ECF No. 177. The defendants moved to adopt the motions of the other. ECF Nos. 178 and 182. The government responded to the motions to dismiss. USA's Opp'n, ECF No. 193-1. The Court ultimately agrees with the government and therefore will **DENY** the motions.

1

## I.    LEGAL STANDARD

The purpose of an indictment is to "inform the defendant of the nature of the accusation against him." *Russell v. United States*, 369 U.S. 749, 767 (1962).  Accordingly, an indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  The indictment must inform the defendant of the "precise offense" he is accused of so that "he may prepare his defense and plead double jeopardy in any further prosecution for the same offense," *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014), but need not include detailed allegations, *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007).

Under Federal Rule of Criminal Procedure 12, a defendant may raise by pretrial motion "any defense, objection, or request that a court can determine without a trial on the merits" and can challenge an indictment and move to dismiss for "failure to state an offense." Fed. R. Crim. P. 12(b)(1), (b)(3).  When considering a motion to dismiss, a court "is limited to reviewing the face of the indictment." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphasis and citation omitted).  "[T]he indictment must be viewed as a whole and the allegations must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011).  Rule 12 is the appropriate mechanism to challenge an indictment when the defendant contends that a statutory provision is unconstitutional, or inapplicable to the defendant's conduct.  *United States v. Nassif*, No. 21-cr-421 (JDB), 2022 WL 4130841, at *2 (D.D.C. Sept. 12, 2022).  In those circumstances, courts review the legal sufficiency of the indictment.  *Id.*

## II.    DISCUSSION

### A.  The Indictment is Sufficiently Specific

For his challenge on specificity, Mr. Munchel relies on Federal Rule of Criminal Procedure 7, the Fifth Amendment, and the Sixth Amendment.  *See* Def. Munchel's Mot. Dismiss 7.  Under

Rule 7, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . [a] count may incorporate by reference an allegation made in another count . . . [a] count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." Fed. R. Crim. P. 7(c)(1). For the Fifth and Sixth Amendments, an indictment is sufficient when it does two things. "[F]irst, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see United States v. Sargent*, No. 21-cr-00258 (TFH), 2022 WL 1124817, at *2 (D.D.C. Apr. 14, 2022) (applying that standard to reject a specificity challenge to an indictment similar to the one in this case).

"[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). It is sufficient if it "inform[s] the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *Id.* "The question, then, is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *Bowdoin*, 770 F. Supp. 2d at 146. It is only where "the very core of criminality under" a statute is "a specific identification of fact" that "an indictment must do more than simply repeat the language of the criminal statute." *United States v. Haldeman*, 559 F.2d 31, 124–25 (D.C. Cir. 1976) (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)). Otherwise, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity,

3

set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117 (internal quotation marks omitted).

Mr. Munchel challenges Counts One, Two, Three, Five, Seven, Eight, Nine, and Ten for failing the specificity requirement. *Id.* at 8–9. Ultimately, however, the counts satisfy this standard. They "set[] forth all of the elements of" the charges and "thereby enable[] [the defendants] to prepare a defense and plead that an acquittal or conviction is a bar to future prosecutions." *See United States v. Williams*, No. 21-cr-0618 (ABJ), 2022 WL 2237301, at *8 (D.D.C. June 22, 2022) (rejecting a lack of specificity challenge brought by a defendant charged in connection with the riot and breach on January 6, 2021).

For Count One, the Second Superseding Indictment states:

> On or about January 6, 2021 , within the District of Columbia and elsewhere, the defendants, **ERIC MUNCHEL** and **LISA EISENHART**, knowingly and intentionally conspired to corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, in violation of 18 U.S.C. § 1512(k).

Second Superseding Indictment, ECF No. 141. That language sets forth all the required elements, informs defendants of the precise offense so that they may prepare a defense, and would allow them to plead double jeopardy in any future prosecution for the same offense. Furthermore, there is nothing about Count One that suggests an additional specific identification of fact would be necessary. Mr. Munchel argues that failure to identify the official proceeding renders Count One insufficiently specific. Def. Munchel's Mot. Dismiss 8. However, as other judges in this District have previously held, the date of January 6, 2021 provides the required specificity. *See, e.g.*, *United States v. Weeks*, No. 21-cr-00247 (TFH), 2022 WL 9296415, at *3–6 (D.D.C. Oct. 14, 2022).

For Count Two, Obstruction of an Official Proceeding and Aiding and Abetting, 18 U.S.C.

§§ 1512(c)(2) and 2, the Second Superseding Indictment states:

> On or about January 6, 2021 , within the District of Columbia and elsewhere, the defendants, **ERIC MUNCHEL** and **LISA EISENHART**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

Second Superseding Indictment.  Like the language in Count One, this sets forth all the required

elements, informs defendants of the precise offense so that they may prepare a defense, and would

allow them to plead double jeopardy in any future prosecution for the same offense.  Furthermore,

there is nothing about Count Two that suggests an additional specific identification of fact would

be necessary.  *See Weeks*, 2022 WL 9296415 at *3–6 (coming to the same conclusion).

And the same is ultimately true for the other counts in the indictment as well.  "[E]ach

count sets forth every element of the charged offense, informs [defendants] of the charges against

which [they] must defend, and sufficiently protects against double jeopardy concerns."  *United

States v. McHugh*, No. 21-cr-453 (JDB), 2023 WL 2384444, at *4 (D.D.C. Mar. 6, 2023) (rejecting

the same challenge on specificity grounds); *Sargent*, 2022 WL 1124817 at *3–10 (same).

Mr. Munchel is ultimately requesting the kind of detailed indictment not required by law,

and his alleged deficiencies are exactly the kind of "*how*" details that the government is *not*

required to fill an indictment with.  *Verrusio*, 762 F.3d at 13–15; *see Haldeman*, 559 F.2d at 124

("[N]either the Constitution, the Federal Rules of Criminal Procedure, nor any other authority

suggests that an indictment must put the defendants on notice as to every means by which the

prosecution hopes to prove that the crime was committed.").[1]

---

[1] Mr. Munchel's frequent reliance on the district court's opinion in *United States v. Hillie* is unpersuasive.  227 F. Supp. 3d 57 (D.D.C. 2017).  That case featured unique circumstances, including overlapping and broad time periods

The Second Superseding Indictment satisfies the specificity requirements in Rule 7 and the Constitution.  Therefore, Mr. Munchel's motion will be **DENIED** on those grounds.

### B.  A Taser May be a Deadly or Dangerous Weapon

Next, Mr. Munchel challenges Counts Three, Five, and Seven arguing that they fail to state an offense because a Taser, which those counts allege he used or carried, is not a dangerous weapon as a matter of law.  Def. Munchel's Mot. Dismiss 10–13.  The challenge is meritless at this stage.

To succeed on a motion to dismiss an indictment for failure to state an offense, the defendant may succeed if "only an issue of law is presented."  *See United States v. Yakou*, 428 F.3d 241, 246–47 (D.C. Cir. 2005).  If there are "material facts" in dispute as to whether a Taser is a dangerous weapon, then the motion should be denied.  *See id.*  The question before the Court then is whether the government *could* show that a Taser is a dangerous weapon at trial.  *See id.*

Mr. Munchel ultimately appears to misunderstand that point, arguing that "[t]he Government has failed to offer evidence that the Taser could or did cause serious bodily injury."  Def. Munchel's Mot. Dismiss 12.  But the government is required to do no such thing at the indictment stage.  This Court has previously understood a dangerous weapon to be "an object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm."  *United States v. Chansley*, 525 F. Supp. 3d 151, 162 (D.D.C. 2021).  To dismiss the challenged counts before the government has an opportunity to make its factual showing would be inappropriate.  Indeed, the D.C. Circuit found, for purposes of detention, that the very Taser at

---

with "lack of particularity or specificity regarding Hillie's actions []mak[ing] it impossible to discern—and therefore to distinguish between—the conduct underlying each separate count."  *Id.* at 72.  This indictment, however, is sufficiently specific and clear about the conduct underlying each count as well as the time period involved (January 6, 2021).  Second Superseding Indictment; *see also Sargent*, 2022 WL 1124817 at *6 (distinguishing *Hillie* on the same grounds).

issue in the indictment qualifies as a dangerous weapon. *Munchel*, 991 F.3d at 1281 n.5. There is consequently no basis to hold that, as a matter of law, a Taser is not a dangerous weapon.

The Court will **DENY** Mr. Munchel's challenge to the indictment on those grounds.

### C. Counts One, Two, Four, Five, Six, Eight, Nine, and Ten are not Multiplicitous

Finally, Mr. Munchel argues that Counts Two, Five, Eight, Nine, and Ten are multiplicitous. Def. Munchel's Mot. Dismiss 13. And Ms. Eisenhart argues that Counts One, Two, Four, Six, Eight, Nine, and Ten are multiplicitous. Def. Eisenhart's Second Mot. Dismiss 1. "Multiplicity violates the Fifth Amendment's Double Jeopardy Clause, which protects not only against a second prosecution for the same offense after acquittal or conviction but also against charging the same offense in more than one count of a single indictment." *United States v. Cooper*, 886 F.3d 146, 153 (D.C. Cir. 2018) (internal quotation marks and alternations omitted).

"To determine multiplicity vel non, courts generally apply the *Blockburger* test." *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). In other words, do each of the "offenses created require[] proof of a different element[?]" *See id.* This test "focuses exclusively on the statutory elements of the offenses." *United States v. Weathers*, 186 F.3d 948, 951, 954 (D.C. Cir. 1999). Nevertheless, if it is plain that Congress intended a different result, the *Blockburger* test will yield to that different expression of Congressional intent. *Mahdi*, 598 F.3d at 888.

Each of the challenged counts requires at least one proof of fact that the others do not and defendants have not provided any reason to believe that Congress intended a contrary result.

For Count One, charging both defendants with Conspiracy to Commit Obstruction, 18 U.S.C. § 1512(k), the government must show that the defendants knowingly and intentionally conspired to commit an offense under 18 U.S.C. § 1512.  The other counts, including Count Two, do not require proof of that element.  For Count Two, charging both defendants with Obstruction of an Official Proceeding and Aiding and Abetting, 18 U.S.C. § 1512(c)(2) and 2, the government must show that the defendants "otherwise obstruct[ed], influence[d], or impede[d] any official proceeding, or attempt[ed] to do so."  The other counts, including Count One, do not require proof of that element.  For Count Four, charging Ms. Eisenhart with Entering or Remaining in a Restricted Building, 18 U.S.C. §§ 1752(a)(1), the government must show that the defendant acted "without lawful authority" while entering or remaining in the restricted building or grounds.  The other charges do not require that proof.  For Count Five, charging Mr. Munchel with Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A), and Count Six, charging Ms. Eisenhart with Disorderly or Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2), the government must show that the defendants employed "disorderly or disruptive conduct" which "impede[d] or disrupt[ed] the orderly conduct of government business or official functions."  The others do not require that element.  For Count Eight, charging both defendants with Entering and Remaining in the Gallery of Congress, 40 U.S.C. § 5104(e)(2)(B), the government must show that the defendant "enter[ed] or remain[ed] in the gallery of either House of Congress" and did so "in violation of rules governing admission to the gallery."  The others do not require these elements.  For Count Nine, charging both defendants with Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D), the government must show that the defendants acted "with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the

orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress."  The others do not require that element.   For Count Ten, charging defendants with Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G), the government must show that the defendants "parade[ed], demonstrate[ed], or picket[ed] in any of the Capitol Buildings."  The others do not require that element.

Because each count requires proof of a fact that the others do not, the various counts pass the *Blockburger* test.  And because there is no evidence of Congressional intent otherwise, the Court concludes that the counts are not multiplicitous.   Accordingly, defendants' multiplicity challenge will be **DENIED**.

### D.  Ms. Eisenhart's Challenges to Counts One, Two, Four, and Six Fail

Ms. Eisenhart's challenges to Counts One, Two, Four, and Six will be denied for the reasons that this Court previously explained in *United States v. Bingert*, 605 F. Supp. 3d 111, 118–32 (D.D.C. 2022) and given the recent decision in *United States v. Fischer*, ---- F.4th ----, 2023 WL 2817988 (D.C. Cir. Apr. 7, 2023).

In *Bingert*, this Court explained why 18 U.S.C. § 1512 states an offense in this context, *Bingert*, 605 F. Supp. 3d at 118–20, 123, and why it is not unconstitutionally vague, *id.* at 120–23. The Court also explained why Sections 1752(a)(1) and (a)(2) state an offense in this context.  *Id.* at 130–32.   The defendant acknowledges that this Court has ruled on these issues, *see* Def. Eisenhart's First Mot. Dismiss 1 n.1. (citing *Bingert*), but wishes to "adopt certain arguments made in the cases where Judge Nichols granted a motion to dismiss charges."  *Id.* at 1.   That is understandable.   But because nothing in the defendant's motion alters the Court's reasoning in *Bingert*, and because the arguments as to Section 1512 accepted by Judge Nichols were rejected in *Fischer*, this Court rejects Ms. Eisenhart's identical challenge.

Beyond those previously resolved arguments, Ms. Eisenhart also contends that the corrupt mens rea required under Section 1512(c) "is undefined and vague" or that it "must properly be limited to a narrow category of situations in which a defendant has personally benefitted" and that "1512(c)(2)'s 'otherwise' clause requires proof of a separate offense." *Id.* at 2.  Those arguments both fail under *Fischer*.

First, the "corruptly" language in the statute is not undefined, vague, or limited to situations where a defendant personally benefited.  While the lead opinion and concurring opinion in *Fischer* were at odds regarding the precise bounds of the corrupt mens rea, both agreed that the "corruptly" requirement applies beyond just a defendant personally benefiting and that an indictment alleging a corrupt mens rea in the same manner as the one in this case survives a motion to dismiss.  *Fischer*, 2023 WL 2817988 at *7–9. (lead opinion) (refusing to adopt a specific definition of corruptly because the indictment survives under any definition); *id.* at *17–28 (Walker, J., concurring in part and concurring in the judgment) ("When used as a criminal mental state, 'corruptly' is a term of art that requires a defendant to act with an intent to procure an unlawful benefit either for himself or for some other person[,]" "the indictments should be upheld . . . because they allege that the Defendants corruptly obstructed, influenced, and impeded an official proceeding." (internal quotation marks, citations, and alterations omitted)).  The indictment here uses language tracking the statute and alleges that the defendants "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding."  Second Superseding Indictment.  That is sufficient.

Second, *Fischer* also disposes of the argument that "otherwise" requires proof of a separate offense.  The lead opinion, joined by Judge Walker, concluded that "otherwise" means "in a different manner."  *Fischer*, 2023 WL 2817988 at *4–5.  It does not require proof of a separate

offense and instead "encompass[es] all forms of obstructive acts." *Id.* at *5.  Ms. Eisenhart's challenge therefore fails on those grounds as well.

Altogether, *Bingert* and *Fischer* resolve the motion to dismiss Counts Two, Four, and Six in favor of the government.  Because Ms. Eisenhart challenges Count One on the same grounds as she challenges Count Two, *see* Def. Eisenhart's First Mot. Dismiss 22, her attack on Count One must fail as well.

### E.  Section 5104(e)(2)(G) is Constitutional

Ms. Eisenhart's motion raises one additional challenge that this Court has not previously dealt with: whether 40 U.S.C. § 5104(e)(2)(G) violates the First Amendment because it is overly broad or the Fifth Amendment because it is vague on its face.  For overbreadth, Ms. Eisenhart contends that "[t]he plain language of this statute is alarmingly broad, and by its own terms covers three classic modes of First Amendment activity – parading, demonstrating, or picketing."  Def. Eisenhart's First Mot. Dismiss 28.  For vagueness, Ms. Eisenhart argues that "Section 5104(e)(2)(G) fails to put ordinary people on notice of the conduct that it prohibits, and as such, creates a risk of arbitrary and discriminatory enforcement."  *Id.* at 31.  Because the statute is not as broad as Ms. Eisenhart contends, nor so vague as to violate the Constitution, the Court rejects her arguments.

### i.    Section 5104(e)(2)(G) is Not Unconstitutionally Overbroad

Under traditional overbreadth doctrine, a law touching First Amendment concerns "is facially invalid if it prohibits a substantial amount of protected speech."  *United States v. Williams*, 553 U.S. 285, 304 (2008).  The doctrine balances the "competing social costs" of "threat of enforcement of an overbroad law deter[ing] people from engaging in constitutionally protected speech" on one hand and "invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal."

*Id.* at 292.  "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* at 293 (internal quotation marks and citation omitted).  Accordingly, this Court must "vigorously enforce[] the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* at 292.

In order to evaluate a statute, the Court must first "construe the challenged statute [for] it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* at 293.  Then, the Court must "turn to whether the statute, as [the Court has] construed it, criminalizes a substantial amount of protected expressive activity." *Id.* at 297.

Section 5104(e)(2)(G) states that "[a]n individual or group of individuals may not willfully and knowingly" "parade, demonstrate, or picket in any of the Capitol Buildings."  Ms. Eisenhart understands this language to cover not just "disruptive conduct" but rather "nearly all First Amendment activity."  Def. Eisenhart's First Mot. Dismiss 30–31.  Ms. Eisenhart primarily relies on legislative history to come to that conclusion. *See id.* at 28–31.  However, "[l]egislative history is an uneven tool that cannot be used to contravene plain text." *Bingert*, 605 F. Supp. 3d at 128.  And the plain text of Section 5104(e)(2)(G) does not sweep nearly as broadly as Ms. Eisenhart believes.

Starting with the definitions of the three operative verbs.  To parade requires one to be part of "a public procession" especially "involving many different people," *Parade*, Merriam–Webster Dictionary Online, https://www.merriam-webster.com/dictionary/parade (last visited April 04, 2023), or to otherwise act as part of a group so that the group can be seen. *See Nassif*, 2022 WL 4130841 at *6 & n.7; *Parade*, Webster's Third New Int'l Dictionary 1635 (1965) (defining parade using various group-based definitions involving "an assembly of people").  To demonstrate is "to make a public display of sentiment for or against a person or cause." *Demonstrate*, Webster's

Third New Int'l Dictionary 600 (1965); *see Nassif*, 2022 WL 4130841 at *6 (using the same definition). To picket is to "walk or stand in front" or be "posted [] in a demonstration as a protest against a policy of government." *Picket*, Webster's Third New Int'l Dictionary 1710 (1965); *see Nassif*, 2022 WL 4130841 at *6 & n.8 (identifying a similar group-bound definition).

Taking these words in light of their neighbors, *see Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961), the Court understands Section 5104(e)(2)(G) to have the same scope ascribed to it by Judge Bates: to "prohibit[] taking part in an organized demonstration or parade that advocates a particular viewpoint." *See Nassif*, 2022 WL 4130841 at *6 (internal citation omitted). Furthermore, the statute prohibits that behavior only when done willfully, knowingly, and in the Capitol Buildings.

Having construed the reach of the statute, the Court must now turn to whether it criminalizes a substantial amount of protected expressive activity.  It does not.

When considering the First Amendment's reach on public property, a court must begin by considering the forum where the speech or expressive conduct is regulated.  "The Supreme Court has recognized three different types of public property for free speech purposes: (1) the traditional public forum, (2) the designated public forum, and (3) the nonpublic forum." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000).

The first category covers places like "streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (citation omitted).  First Amendment activity in such places is the most protected from government intrusion.

13

Next, the designated public forum is "public property which the state has opened for use by the public as a place for expressive activity." *Id.* Examples include a school board meeting and a municipal theater. *Id.* First Amendment activity at a designated public forum is less protected than activity at a traditional public forum. *Id.*

Finally, the nonpublic forum consists of "[p]ublic property which is not by tradition or designation a forum for public communication." *Id.* at 46. The government's power to restrict First Amendment activity is at its height for nonpublic forums where "[i]n addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* That is, "[t]he Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985) (emphasis in the original).

Two courts in this district, when faced with First Amendment challenges to regulation of activity in the Capitol Buildings, have concluded that they are nonpublic forums. *See Bynum*, 93 F. Supp. 2d at 56; *Nassif*, 2022 WL 4130841 at *4. This Court agrees. Indeed, Ms. Eisenhart presents no argument whatsoever on whether the inside of the Capitol represents a traditional public forum or a designated public forum. And the evidence counsels against both propositions.

First, Congress has not opened up its buildings, historically or otherwise, to free and unabridged public discussion of ideas and public matters. Rather, the Capitol is, and has been, regulated for the organized discussion of public matters by the People's legislators, with an allowance for those who wish to petition their representatives to do so in a well-ordered and sufficiently non-disruptive manner. *See Bynum*, 93 F. Supp. 2d at 56; *Nassif*, 2022 WL 4130841

at *4.  In fact, "it has long been recognized that 'the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators.'"  *Nassif*, 2022 WL 4130841 at *4 (quoting *Bynum*, 93 F. Supp. 2d at 55).

Second, the fact that the Capitol is open for certain discussions and for observation does not render it a designated public forum.  It is trite law that "[t]he government does not create a public forum by inaction or by permitting limited discourse."  *Cornelius*, 473 U.S. at 802.  Instead, a designated public forum arises when the government "intentionally open[s] a nontraditional forum for public discourse."  *Id.*  Here, nothing has "evidenced a clear intent [by Congress] to create a public forum."  *See id.*  Indeed, it has suggested the opposite.  "All indications are that Congress has not opened the Capitol as a public forum for free and open public discourse."  *See Bynum*, 93 F. Supp. 2d at 56.

Consequently, there is no traditional basis for the Capitol as a public forum, nor a clear intent by Congress to render it a designated public forum.  Because the Capitol is neither by tradition nor designation a public forum, it is instead a nonpublic one.  Accordingly, Congress may restrict First Amendment activity so long as the restrictions are "'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'"  *See id.* (quoting *Cornelius*, 473 U.S. at 806).  Both requirements are satisfied here.

For viewpoint neutrality, nothing in Section 5104(e)(2)(G) singles out a particular viewpoint for punishment.  It discusses no particular message, nor purpose of activity.  In the context of the events leading to this criminal case, it would have prohibited parading, demonstrating, or picketing in support of certification of the Electoral College vote as much as it prohibited the same for those advocating against certification.

15

For reasonableness in light of the purpose served by the forum, the prohibition passes muster. The primary purpose of the Capitol is to allow Congress to carry out its lawmaking role. In addition, the Capitol serves as a place where citizens can observe their legislators and at times bring their concerns directly. Section 5104(e)(2)(G) reasonably protects both functions. For the former, the prohibition prevents organized assemblages advocating a particular viewpoint from disrupting the day-to-day business of holding hearings, drafting legislation, debating proposals, negotiating deals, and voting on final language. All of those normal lawmaking functions would be threatened if organized groups were daily allowed to roam the Capitol Buildings with "a license to delay, impede, or otherwise disrupt the orderly processes of the legislature which represents all Americans." *Bynum*, 93 F. Supp. 2d at 55–56 (internal citation and ellipsis omitted). Furthermore, such parading, demonstrating, and picketing would threaten the ability for other Americans to observe their Congress and to have their own communications with lawmakers. In sum, the statute reasonably bars a particular kind of disruptive behavior from undermining the purpose served by the Capitol Buildings.

Therefore, while it is true that Section 5104(e)(2)(G) reaches expressive conduct and speech, it "is [a permissible] reasonable rule: it targets activities that Congress reasonably could have concluded would disrupt its legislative process." *Nassif*, 2022 WL 4130841 at *5. And, the ban is in step "with a long line of cases rejecting challenges to complete bans on otherwise permissible First Amendment activity as reasonable, viewpoint-neutral regulations in nonpublic fora." *Id.* (collecting cases). Furthermore, while it is possible that some hypothetical defendants might succeed on an as-applied challenge given the particular circumstances of their cases, the Court cannot and will not "summon forth an endless stream of fanciful hypotheticals" to invalidate Section 5104(e)(2)(G). *See Williams*, 553 U.S. at 301. There is an extensive plainly legitimate

sweep to the law without an indication of substantial effect on protected First Amendment activity. Accordingly, the Court will not employ the "strong medicine" of First Amendment overbreadth and invalidate the law. *See id.* at 292–93.

### ii.    Section 5104(e)(2)(G) is Not Unconstitutionally Vague

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *Id.* at 304.  A criminal law is void for vagueness if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Unconstitutional vagueness accordingly involves two separate but often interlocking inquiries.

First, criminal statutes do not provide fair notice when they tie culpability to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306.  Fair notice does not concern itself with the possibility that "it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved." *Id.*   Instead, to provide fair notice the relevant incriminating fact simply must not be "indetermina[te]." *Id.*  A statute is not vague because certain cases may present "close calls," *id.* at 305, or because it is "broad," *United States v. Andries*, No. 1:21-cr-93 (RC), 2022 WL 768684, at *9 (D.D.C. Mar. 14, 2022).

Second, a law authorizes "arbitrary and discriminatory enforcement" when it lacks any standards to govern the discretion it grants.  *Agnew v. Gov't of D.C.*, 920 F.3d 49, 55 (D.C. Cir. 2019).   This category includes laws whose application turns on subjective judgments or preferences.  *Id.*  A statute that criminalized "annoying" a passerby, for example, would invite arbitrary and discriminatory enforcement—what "annoys some people does not annoy others."

*See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).  Nevertheless, a statute that sets an "imprecise" but ultimately comprehensible normative standard is not unconstitutionally vague.  *Id.*

When, as here, there are First Amendment implications to the criminal statute challenged, "the requirement of a reasonable degree of clarity" is particularly important.  *See Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391, 411 (D.C. Cir. 2017).  Nevertheless, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."  *Williams*, 553 U.S. at 306.

Applying those principles to this case, the statute is plainly not unconstitutionally vague. As the Court previously explained, Section 5104(e)(2)(G) prohibits willfully and knowingly taking part in an organized demonstration or parade that advocates a particular viewpoint in the Capitol Buildings.  This, at most, "requires a person to conform his conduct to an imprecise but comprehensible normative standard."  *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Coates*, 402 U.S. at 614).  That this Court had to perform some basic statutory construction, and consult a dictionary, does not support Ms. Eisenhart's vagueness challenge. *See id.* at 1108 (using statutory construction and dictionary definitions to construe a statute and then rejecting a void for vagueness challenge).  "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct at all." *Id.* at 1107 (internal quotation marks, citation, and alternations omitted).  Here, Section 5104(e)(2)(G) provides sufficient clarity such that the relevant incriminating activities are not indeterminate and enforcement does not depend on judgments that are so imprecise or subjective as to render enforcement arbitrary and discriminatory.  Ultimately, Section 5104(e)(2)(G) is a broad but straightforward prohibition on organized demonstration activity expressing a viewpoint

in the Capitol Buildings.  That standard is not void for vagueness and accordingly Ms. Eisenhart's

challenge on those grounds will be denied.  *Accord Nassif*, 2022 WL 4130841 at *7.

### III.    CONCLUSION

Because the bases for the motions to dismiss are without merit, the Court will **DENY** the

motions.  A separate order shall issue.


Date: April __18__, 2023

Royce C. Lamberth
United States District Judge